**Delores J. ROMERO and Joseph
E. Romero, Plaintiffs,**

v.

**UNITED STATES of America and Web
Service Company, Inc., a California
corporation, Defendants.**

**No. 93–B–841.**

United States District Court,
D. Colorado.

Feb. 9, 1994.

J. Gregory Walta, Celeste L. Gerber, J. Gregory Walta, P.C., Colorado Springs, CO, for plaintiffs.

Timothy J. Judson, Law Offices of Timothy J. Judson, Denver, CO, for Web Service Co.

Michael E. Hegarty, Asst. U.S. Atty., for U.S.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER is before the Court on Plaintiffs' motion to prohibit government interference with case preparation. The Court heard argument on the motion at a hearing on January 24, 1994. Counsel for the parties were present at that time. The Court then took the motion under advisement.

### I.

Plaintiff Delores J. Romero is the wife of Plaintiff Joseph E. Romero, who is an active duty member of the United States Army. On May 19, 1992, Delores Romero was exiting Building 6089 at Fort Carson, Colorado. This building contains a laundromat, and Delores Romero had gone there to wash clothes.

As Delores Romero was leaving Building 6089, she fell on the steps and injured herself. She was taken to Evans Army Hospital at Fort Carson where she received medical treatment. It was discovered that she had suffered a fractured ankle.

Building 6089 is owned by the United States of America (Government) through the Department of the Army. The laundromat was run by Defendant Web Service Company, Inc. through a concession agreement with the Government.

During the course of treatment at Evans Army Hospital, Delores Romero came under the care of Dr. Mark D. Turner, M.D. Dr. Turner is a Major in the United States Army Medical Corps, stationed at Fort Carson, Colorado. He has treated Ms. Romero since the accident in 1992. Ms. Romero has had two surgeries on her ankle and is continuing to experience pain.

Plaintiffs filed an administrative claim under the Federal Tort Claims Act. They alleged that the Government had failed to properly care for the building, as the steps were uneven and there was no landing imme-

diately outside of the door. The claim was denied by the United States Army. This case was commenced shortly thereafter. Defendant Web Service Company was joined as a party on the basis that it had failed to properly notify customers of a problem with the steps.

During the course of this case, Plaintiffs' counsel attempted to set an appointment to talk with Dr. Turner. After the appointment was set, counsel for Plaintiffs was advised that counsel for the Government would be present for the meeting. It was thereafter that Plaintiff's motion was filed. The Government maintains that it has a right to preclude Plaintiff from using Dr. Turner as an expert witness. It further maintains that it has a right to have a representative present when Plaintiff's counsel talks with Dr. Turner.

## II.

This case involves two issues that appear to be of first impression. No party to this case has provided extensive research on these issues, and this Court has not found any case exactly on point.

The initial issue presented to the Court is whether Dr. Turner can be endorsed by Plaintiffs as an expert witness. As the Court understands the Government's argument, the claim is that the Department of the Army has enacted regulations that preclude Plaintiffs from endorsing Dr. Turner as an expert witness. Since Plaintiffs cannot endorse Dr. Turner as an expert, the Government argues, in effect, that there is no need for Plaintiffs' counsel to talk with him.

Plaintiff Delores Romero was entitled to medical care due to her status as a dependent spouse. It is not disputed that the Government provided this care after the fall and has continued to do so to this date. Delores Romero will be entitled to medical care as long as she is married to Plaintiff Joseph Romero.

██ It is undisputed that Dr. Turner has been the treating physician for Plaintiff Delores Romero. He has the most complete picture of Ms. Romero's injuries and, arguably, is in the best position to provide some insight into her prognosis for the future. It is not disputed that Dr. Turner is an employ-ee of the Government in light of his status as a commissioned officer.

The Department of the Army has promulgated 32 CFR § 516.42 which reads, in part, as follows:

(a) DA maintains strict impartiality in private litigation and conflicts of interest are to be avoided (AR 600–50). DA policy is that present and former present DA military members personnel or civilian employees will not provide, with or without compensation, opinion or expert testimony concern official information, subjects, or activities in private litigation or in litigation in which the United States has an interest as a party other than the United States without the prior approval of HQDA . . .

(b) Members of the Army Medical Department or other qualified specialists may testify in private litigation within the following limitations:

(1) The litigation involves patients they have treated, investigations they have made, laboratory tests they have conducted, or other action they have taken in the regular course of their military duties.

(2) They limit their testimony to factual matters such as:

(i) Their observations of the patient, or other operative facts.

(ii) The treatment prescribed or corrective action taken.

(iii) Course of recovery or steps required for damage suffered.

(iv) Contemplated future treatment or utility of item damaged.

(3) Their testimony may not extend to hypothetical questions or to a prognosis.

It is not disputed that Plaintiffs have not sought approval from the Department of the Army to use Dr. Turner as an expert. The Government argues that the failure to make this request to the Department of the Army means that Dr. Turner "is *not* her expert, and Army regulations preclude Dr. Turner from providing any expert opinion or testimony to plaintiff's counsel." Government's Response to Motion at p. 2.

This Court has found only one case dealing with the cited regulation. In *United States*

*v. Fidelity and Deposit Ins. Co. of Maryland,* 986 F.2d 1110 (7th Cir.1993), a subcontractor brought an action against the general contractor for breach of contract on a military dormitory project. Plaintiff presented two witnesses who were employees of the Army Corps of Engineers. Each was allowed to testify as an expert witness. Defendant's argument was that regulations of the Department of the Army precluded the two witnesses from testifying as experts. The Seventh Circuit held initially that the regulation dealt only with matters between its employees and the Department of the Army. *Id.* at 1118. Thus, it was not error for the witnesses to be allowed to testify as expert witnesses.

From this Court's perspective, the Government's position becomes untenable for three reasons. First, Dr. Turner will have to be qualified as an expert to discuss the treatment he has provided and that it was medically necessary. The Government's own regulation will allow his testimony as an expert on matters such as treatment. 32 C.F.R. § 516.42(b). Thus, Dr. Turner can be endorsed as an expert witness by Plaintiffs.

■ Second, Plaintiffs have a right to call Dr. Turner and ask him all relevant questions about information that he may have concerning this case. Once he is called, then the Federal Rules of Evidence control his testimony, not administrative regulations promulgated by the Department of the Army. See Fed.R.Evid. 702 and 703. The Government cites no statutory basis precluding Dr. Turner from testifying as to all aspects of his care of Delores Romero and anticipated future treatment. It cites only this regulation, and the Federal Rules of Evidence will override such regulation, as Federal Rules of Evidence have been approved, implicitly or tacitly, by Congress.

■ Third, it simply makes no sense that a party would be allowed to determine whom the other side may endorse as a witness. The Government cannot offer medical care to a person injured on its property and then preclude the best evidence of treatment and medical prognosis. Dr. Turner can be asked his opinion as to his prognosis for Delores Romero's future treatment and condition. His testimony truly is the best evidence available, as he has been the treating physician. Under the Federal Rules of Evidence, Dr. Turner's opinion as to prognosis would be relevant and admissible.

The Seventh Circuit's view of the regulation is that it

is more plausibly read to support the inference that the Army is attempting to avoid any seeming bias or other conflict in its relations with private parties that might impair the service's national defense duties or otherwise reflect poorly on the Army.

*Id.* at 1119. By the same token, the Government cannot use this regulation to gain an unfair advantage in precluding the best evidence from being presented to this Court at trial. Dr. Turner will testify truthfully and professionally. If that testimony hurts the Government, then so be it.

■ The Department of the Army can preclude Dr. Turner from being reimbursed for his testimony. To that extent, the regulation is appropriate and must be upheld.

To the extent that the Government is attempting to limit the availability of evidence that should be presented to this Court at trial, Plaintiffs' motion is granted. Plaintiffs may call Dr. Turner and endorse him as a witness. Once called, he may be asked any appropriate and relevant questions, within the limits of the Federal Rules of Evidence. The Government may not limit, through agency regulation, the search for truth and best evidence available of Plaintiff Delores Romero's condition.

### III.

■ The second major issue is that of whether or not this Court can and should prevent Government counsel from being present when Plaintiffs' counsel talks with Dr. Turner. It is the position of the Government that it has such a right.

The Government again relies upon Department of the Army regulations. The first regulation is found at 32 CFR § 516.44, which reads, in part, as follows:

(a) Requests for interviews with or subpoenas for testimony of present DA military personnel or civilian employees in litigation in which the United States has an

interest will be immediately referred to the SJA or legal adviser serving the organization of the individual whose interview or testimony is requested ...

The second regulation relied upon is found at 32 CFR § 516.41(b). That regulation provides that if an interview is allowed of a military or civilian employee of the Department of the Army, then "[a] JA of DA civilian attorney should be present during any interview or testimony to act as legal representative of the Army." In this case, the Government has indicated that Dr. Turner may be interviewed by counsel for Plaintiffs, but only if a military lawyer is present.

Plaintiffs' position is that the Government is attempting to limit the preparation of the case. This Court disagrees. It may be one thing to attempt to limit the testimony of a witness once he or she is called into a court. It is different when the limitation is only as to preparation and will not affect the search for truth.

Dr. Turner is merely a witness. He must be qualified as an expert in order to detail what medical treatment was provided to Delores Romero and why it was medically necessary. What he has to say can be said to both sides. There is nothing special about his testimony, as he is not the traditional expert witness who may be hired by a party. Further, the Government has a right to monitor the information provided by its military physicians. In this case, the regulations are appropriate.

This Court will not grant Plaintiffs' motion as to this point. Plaintiffs will be granted an additional twenty days to secure an additional expert witness, if that is their desire. Discovery is reopened to the extent that Defendants wish to depose any additionally designated expert.

IT IS HEREBY ORDERED that Plaintiffs' motion to prohibit government interference is granted, in part, as set forth in this Memorandum Opinion and Order; and

IT IS FURTHER ORDERED that Plaintiffs have up to and including March 4, 1994 to endorse an additional expert witness, provided that a copy of any report or a detailed statement of anticipated testimony is provided to opposing counsel; and

IT IS FURTHER ORDERED that discovery is re-opened to the extent that Defendants may depose any newly designated expert of Plaintiffs, provided that the deposition is completed by April 15, 1994; and

IT IS FURTHER ORDERED that each side is to pay its own attorney's fees and costs as to this motion.