**GULF GROUP GENERAL ENTERPRISES CO. W.L.L., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Nos. 06–835C, 06–853C, 06–858C.**

United States Court of Federal Claims.

May 2, 2011.

Iliaura Hands, Miller & Williamson LLC, New Orleans, LA, for the plaintiff. With her was Machale A. Miller, Miller & Williamson LLC, New Orleans, LA.

Robert C. Bigler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Timothy P. McIlmail, Senior Trial Counsel, Deborah A. Bynum, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division, Washington, D.C. Of counsel, Stacey K. Grigsby, Kent C. Kiffner, Lartease M. Tiffith, and Russell J. Upton, Commercial Litigation Branch, and Major Daniel J. Everett, United States Army Litigation Division, Arlington, VA.

## ORDER

HORN, J.

Prior to the upcoming trial of the above numbered, consolidated cases, defendant filed a Motion in Limine to exclude the expert report of Steven R. Perry, a proposed expert witness for plaintiff Gulf Group General Enterprises Co. W.L.L. (Gulf Group). Defendant argues that the opinions expressed by Mr. Perry in his expert report are legal conclusions and invade the province of the court. Defendant also argues that, based on the case of *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), the Army's "*Touhy* regulations" at 32 C.F.R. § 516.49(a) (current as of Apr. 21, 2011), preclude the plaintiff from using Mr. Perry as an expert witness. Given the impending trial, this Order confirms the court's direction as to how to proceed, given orally to the parties during a telephone conference on April 19, 2011.

Mr. Perry is a retired Army contracting officer. He served as a military officer for 26 years, rising to the rank of full Colonel. He has 16 years of experience as a military contracting officer, was a warranted con-

tracting officer with unlimited contracting authority, and has contracting experience on multiple, contingency, operational, military deployments to the Middle East. He was retained by plaintiff as an expert government contract consultant to give his opinion on the terminations of three Gulf Group contracts with the Army. Mr. Perry reviewed the Army contracts at issue, depositions and other documents associated with this case, and prepared an expert report.[1] Mr. Perry's undated report, which is attached to the defendant's motion in limine, discusses a variety of contract issues, including Federal Acquisition Regulation (FAR) provisions and the "legal framework of the FAR's Termination for Convenience." In his report, Mr. Perry stated that the Army's decisions to terminate Gulf Group's contracts for the convenience of the government were unjustified, in violation of the FAR, "not in accordance with basic government contracting practices and procedures," "highly irregular," "arbitrary and capricious," based on false allegations and were "bad faith decisions."

The court recognizes it is the responsibility of the undersigned Judge to decide the factual and legal issues raised by plaintiff's complaints. The decisions on the ultimate issues in the case cannot, and will not, be delegated to others for decision. Federal Rule of Evidence 702 provides, in part, that, if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

 "Expert testimony that testifies about what the law is or directs the finder of fact how to apply law to facts does not 'assist the trier of fact to understand the evi-

dence or to determine a fact in issue' within the contemplation of Fed.R.Evid. 702. Expert testimony that amounts to an opinion of law is especially disfavored...." *Stobie Creek Invs., LLC v. United States,* 81 Fed. Cl. 358, 360 (2008) (quoting Fed.R.Evid. 702), *aff'd,* 608 F.3d 1366 (Fed.Cir.2010); *see also Stobie Creek Invs., LLC v. United States,* 608 F.3d at 1383–84 ("[T]he trial court properly excluded Smith's expert testimony. Under Rule 702, expert testimony must '*assist* the trier of fact to understand the evidence or to determine a *fact* in issue.' Fed.R.Evid. 702 (emphasis [in original] )."); *Mola Dev. Corp. v. United States,* 516 F.3d 1370, 1379 n. 6 (Fed.Cir.), *reh'g en banc denied* (Fed.Cir.), cert. *denied,* — U.S. ——, 129 S.Ct. 625, 172 L.Ed.2d 608 (2008) ("This affidavit suggests that a supervisory designation was required, pursuant to 12 C.F.R. § 563.13(7)(I) & (III) (1988), to use the purchase method of accounting in a merger to create goodwill as a book asset. Because the proper interpretation of these regulations is an issue of law, expert testimony relating to this question, such as the affidavit of a former government official, 'should not be received, must less considered.' *Rumsfeld v. United Techs. Corp.,* 315 F.3d 1361, 1369, [*reh'g and reh'g en banc denied*] (Fed.Cir.), [cert. *denied,* 540 U.S. 1012, 124 S.Ct. 532, 157 L.Ed.2d 424 (2003) ]."); *see also Rumsfeld v. United Techs. Corp.,* 315 F.3d at 1369 ("[T]he interpretation of CAS [the Cost Accounting Standards]—is an issue of law, not an issue of fact.... The views of the self-proclaimed CAS experts, including professors of economics and accounting, a former employee of the CAS Board, and a government contracts accounting consultant, as to the proper interpretation of those regulations is simply irrelevant to our interpretive task.... That interpretive issue is to be approached like other legal issues—based on briefing and argument by the affected parties."). The *Rumsfeld* court, however, added in a foot-

---

1. In his expert report, Mr. Perry characterizes the three terminated contracts as the "Dumpster" contract (which is the subject of Case No. 06–853C), the "Latrines" contract (Case No. 06–858C), and the "Camp Services" contract (Case No. 06–835C). Mr. Perry has not offered an opinion on the fourth contract at issue in the upcoming trial between Gulf Group and the Army, addressed in Case No. 07–82C, which was not a termination action, but a contract for bottled water, in which Gulf Group seeks demurrage (delay) charges.

note: "Testimony as to the requirements of GAAP [Generally Accepted Accounting Principles] is another matter; the Board [Armed Services Board of Contract Appeals] could properly consider expert testimony on such an issue." *Id.* at 1369 n. 6.

Plaintiff acknowledges in its response that the government's motion in limine "is correct to some extent," as to inadmissible legal conclusions, and submitted a supplemental expert report, dated March 28, 2011. This second expert submission by Mr. Perry, titled "Report—Supplement # 1," assertedly addresses new information not included in the first expert report, and states that the expert report was not intended to "read like or be a judicial opinion. Nor was it intended to apply law to facts invading the province of the Court." Plaintiff argues that the supplemental expert report "eliminates comments on whether any action of the Army contracting officers in the present case was arbitrary and capricious, an abuse of discretion or in bad faith, thus mooting the motion [in limine]."

■■ In spite of concern about experts giving legal opinions, expert testimony on the ultimate issues to be decided by the judicial fact finder is not forbidden under the applicable rules. Federal Rule of Evidence 704, for example, provides that: "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The Notes to Federal Rule of Evidence 704 further state:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach.... They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the

natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed. McCormick § 12.

Fed.R.Evid. 704 Notes, *Federal Civil Judicial Procedure and Rules* 469 (West 2011 ed.); *see also Stobie Creek Invs., LLC v. United States,* 81 Fed.Cl. at 363 ("Expert testimony is not prohibited merely because it 'embraces an ultimate issue to be decided by the trier of fact.' Fed.R.Evid. 704(a). Nonetheless, expert testimony that constitutes legal analysis or application of the law would not assist the court—the trier of fact—in understanding the evidence or determining a fact in issue. '[T]he admissibility of opinion testimony that may involve legal conclusions ultimately rests upon whether that testimony helps the jury resolve the fact issues in the case.'" (quoting 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6284 (2008))); *Sparton Corp. v. United States,* 77 Fed.Cl. 1, 7–8 (2007) ("In general, federal courts have found expert testimony on issues of law, either giving a legal conclusion or discussing the legal implications of evidence, to be inadmissible. Although Fed.R.Evid. 704 was amended so as not to preclude expert testimony on the ultimate issue, the amendment was not intended to allow an expert to advise the court on what outcome to reach.") (citations and footnote omitted).

■ The guidelines do not draw bright lines, and application of the available guidance to actual testimony can prove to be challenging. It is, therefore, difficult in this case to say in advance if Mr. Perry is called to testify and is qualified as an expert witness, whether he will be asked to testify to impermissible matters, or will be able to assist the court to understand the evidence in the cases before the court. Should Mr. Perry's testimony nevertheless stray into offering strictly legal conclusions, the court will entertain and rule on objection(s) from defendant, at that time. In this regard, the court notes that Mr. Perry's supplemental expert report explicitly recognized and accepted the duty to avoid rendering legal conclusions, which he acknowledged as the province of the court. Consequently, the court is unwilling to disallow all testimony from Mr.

Perry at this stage of the proceedings, not knowing what testimony he will offer at trial. The court also notes that there will be no jury present. The undersigned is the sole trier of fact and law at the trial level. Therefore, the risks of members of a jury being prejudiced by testimony on inadmissible matters is not present. In a judge only trial, the undersigned is confident of being able to sort through the responsibility not to allow others to render a decision on the court's behalf.

■ Defendant also argues that Army regulations prohibit Mr. Perry, in fact any former Army personnel, from testifying as an expert witness adverse to the interests of the United States. Defendant cites 32 C.F.R. § 516.49(a), which states:

> *General rule.* Present DA [Department of the Army] personnel will not provide, with or without compensation, opinion or expert testimony either in private litigation or in litigation in which the United States has an interest for a party other than the United States. *Former DA personnel will not provide, with or without compensation, opinion or expert testimony concerning official information, subjects, or activities either in private litigation or in litigation in which the United States has an interest for a party other than the United States.* (See figure G–3, appendix G of this part). An SJA [Staff Judge Advocate] or legal adviser is authorized to deny a request for expert testimony, which decision may be appealed to Litigation Division.

32 C.F.R. § 516.49(a) (emphasis added). Although based on what reads as an absolute bar to former Department of the Army personnel providing "opinion or expert testimony," the defendant argues that:

> Mr. Perry's report indicates that he is a former employee of the Army. There is no dispute that he has not sought authorization to serve as an expert for Gulf Group, that his report is based upon information and knowledge gained while working for the Army, and that his report and testimony advocate a position adverse to the interests of the United States. He falls within the plain meaning of the Army's *Touhy* regulation, and this Court

should exclude his report and testimony accordingly.

The defendant, therefore, suggests in its brief filed with this court that the regulations provide an option for Mr. Perry to seek "authorization" to testify. The cited Army regulations, however, provide no such viable option, which is reinforced by the repetition of the same bar in 32 C.F.R. §§ 516.49(b) and 516.52. The regulations at 32 C.F.R. § 516.49(b) and 32 C.F.R. § 516.52 both contain an absolute bar regarding the furnishing of expert testimony by a former Department of the Army employee in support of a party whose interest is adverse to the interests of the United States. The regulation at 32 C.F.R. § 516.49(b) states:

> *Exception to the general prohibition.* If a requester can show exceptional need or unique circumstances, *and the anticipated testimony will not be adverse to the interests of the United States,* Litigation Division may grant special written authorization for present or former DA personnel to testify as expert or opinion witnesses at no expense to the United States. *In no event may present or former DA personnel furnish expert or opinion testimony in a case in which the United States has an interest for a party whose interests are adverse to the interests of the United States.*

32 C.F.R. § 516.49(b) (emphasis added). The regulation at 32 C.F.R. § 516.52 states:

> **Expert witnesses.** Requests for present or former DA personnel as expert or opinion witnesses from DOJ [Department of Justice] or other attorneys representing the United States will be referred to Litigation Division unless the request involves a matter that has been delegated by Litigation Division to an SJA or legal adviser. *In no event may present or former DA personnel furnish expert or opinion testimony in a case in which the United States has an interest for a party whose interests are adverse to the interests of the United States.*

32 C.F.R. § 516.52 (emphasis added).

As noted, the government chastises plaintiff for not seeking an exception from the Army for Mr. Perry to testify, citing exemption procedures at 32 C.F.R. § 516.52, quoted

above, and 32 C.F.R. § 516.51(a), which states: "*Referral to a deciding official.* Requests, subpoenas, or orders for official information, interviews or testimony of present or former DA personnel in litigation or potential litigation in which the United States has an interest ... will be resolved by the SJA or legal adviser pursuant to the principles of this subpart. Litigation Division will be consulted on issues that cannot be resolved by the SJA or legal adviser." Although these sections both suggest a process to seek permission to testify as an expert or offer opinion testimony, neither of these sections is consistent with the absolute bar against testifying in 32 C.F.R. § 516.49(a) and (b) and 32 C.F.R. § 516.52. Of the exceptions listed in subsection (b), (c), and (d), 32 C.F.R. § 516.49, none appear to apply in the *Gulf* cases.

Defendant identifies the regulations at issue as "*Touhy* regulations," based on the United States Supreme Court's 1951 decision in *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417.[2] Defendant also quotes 5 U.S.C. § 301 (2006) as the basis for those regulations, since the statute states that an agency " 'may prescribe regulations for ... the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property.' " 5 U.S.C. § 301. Defendant, however, omits the very next sentence in this general housekeeping statute, 5 U.S.C. § 301, which was added by Congress to the statute in 1958 in response to the *Touhy* decision. *See EEOC v. Los Alamos Constructors, Inc.,* 382 F.Supp. 1373, 1378 (D.N.M.1974). The omitted sentence states: "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301; *see also Res. Invs., Inc. v. United States,* 93 Fed.Cl. 373, 380 (2010) (addressing the sentence omitted by the defendant: "Congress was concerned that the statute 'ha[d] been twisted from its original purpose as a "housekeeping" statute into a claim of authority to keep information from the public and, even, from the Congress.' " (quoting 1958 U.S.C.C.A.N. 3353)); *EEOC v. Los Alamos Constructors, Inc.,* 382 F.Supp. at 1378 (discussing the origins of the section 301 language omitted by defendant, albeit mostly in terms of document control); *Comm. For Nuclear Responsibility v. Seaborg,* 463 F.2d 788, 793 (D.C.Cir.1971) (section 301 is a "housekeeping provision," "which authorized each department to issue regulations with respect to custody of its papers. This statute does permit [the] centralization of responsibility in a department [on] whether to claim a privilege. But as the Fifth Circuit has held, it does not confer a privilege, and this view of its intendment is fortified by the 1958 amendment which added the following language: 'This section does not authorize withholding information from the public or limiting the availability of records to the public.' " (citing *NLRB v. Capitol Fish Co.,* 294 F.2d 868, 875 (5th Cir.1961) (footnote omitted))).

Although the statute at 5 U.S.C. § 301 contains no explicit language authorizing an agency to withhold documents or testimony from the legal process, the Department of the Army appears to have crafted their regulations to that end. Moreover, the language of the statute at 5 U.S.C. § 301 authorizes prescribing regulations for "the conduct of its employees," that is, present employees. The regulations at 32 C.F.R. §§ 516.49(a) and (b)

**2.** Roger Touhy, an inmate in an Illinois state penitentiary, convicted under state law, filed a habeas corpus action in federal court against the state warden, alleging restraint in violation of the Due Process Clause of the United States Constitution. *United States ex rel. Touhy v. Ragen,* 340 U.S. at 463–64, 71 S.Ct. 416. In the habeas proceeding, a subpoena was issued to the local office of the Federal Bureau of Investigation (FBI), seeking records. *Id.* at 464–65, 71 S.Ct. 416. The Agent–in–Charge of the local FBI office was instructed by the Attorney General of the United States not to comply with the subpoena pursuant to Department of Justice Order No. 3229. *Id.* The Agent–in–Charge complied with this direction and was held in contempt by the trial judge. *Id.* at 465, 71 S.Ct. 416. The United States Supreme Court, however, affirmed the Court of Appeals, which had reversed the trial Judge, *id.,* and issued a very narrow ruling. The ruling by the Supreme Court did not reach the question of whether the Attorney General had the authority to refuse to produce government papers in his possession in response to a court order, rather observing that the Attorney General was not before the trial court. *Id.* at 467, 71 S.Ct. 416.

and 32 C.F.R. § 516.52, however, which are derived from the authority of 5 U.S.C. § 301, also are directed at former employees.

Mr. Perry is no longer a government employee. There is an existing, elaborate government construct to control future employment and activities of government personnel who leave government service. Post-employment restrictions are imposed on former federal employees and former military officers, such as Mr. Perry, by 18 U.S.C. § 207 (2006), titled "Restrictions on former officers, employees, and elected officials of the executive and legislative branches." The statute at 18 U.S.C. § 207 is not a general housekeeping statute, but contains specific, substantive, prohibitions and penalties. Section 207 is implemented by 5 C.F.R. Part 2641 (2011), titled "Post–Employment Conflict of Interest Restrictions." The regulation at 5 C.F.R. § 2641.301(f) provides that a former employee is not prohibited by 18 U.S.C. § 207 "from giving testimony under oath or making a statement required to be made under penalty of perjury," subject, however, to the limitation on expert witnesses addressed in subsection (f)(2). The regulation at 5 C.F.R. § 2641.301(f)(2) provides that, when the bar of 18 U.S.C. § 207(a)(1) ("Permanent restrictions on representation on particular matters") applies, as implemented by 5 C.F.R. § 2641.201, a former employee may not serve as an expert witness, unless called as a witness by the United States, or by court order. Essentially, under normal circumstances, section 207(a)(1) prohibits a former Army officer such as Mr. Perry from being an expert witness for Gulf Group "in connection with a particular matter," in which he participated "personally and substantially" while on active duty. Neither party has raised these matters with the court, perhaps because there is no evidence in Mr. Perry's expert report which raises an issue of a violation of section 207(a)(1).

In this regard, of particular interest are Examples 3 and 4 to 5 C.F.R. § 2641.301(f), which demonstrate how the rules apply to a former executive branch employee desiring to be an expert witness in litigation against the United States. Example 3 states:

A former senior employee of the Environmental Protection Agency (EPA) is a recognized expert concerning compliance with Clean Air Act requirements. Within one year after terminating Government service, she is retained by a utility company that is the defendant in a lawsuit filed against it by the EPA. While the matter had been pending while she was with the agency, she had not worked on the matter. After the court rules that she is qualified to testify as an expert, the former senior employee may offer her sworn opinion that the utility company's practices are in compliance with Clean Air Act requirements....

The expert was able to testify in Example 3 because, as a government employee, she had not participated personally and substantially on the particular matter as to which she subsequently provided expert testimony.

■ Example 4 states:

In the previous example, an EPA scientist served as a member of the EPA investigatory team that compiled a report concerning the utility company's practices during the discovery stage of the lawsuit. She later terminated Government service to join a consulting firm and is hired by the utility company to assist it in its defense. She may not, without a court order, serve as an expert witness for the company in the matter since she is barred by 18 U.S.C. [§ ] 207(a)(1) from making the communication to the EPA. On application by the utility company for a court order permitting her service as an expert witness, the court found that there were no extraordinary circumstances that would justify overriding the specific statutory bar to such testimony. Such extraordinary circumstances might be where no other equivalent expert testimony can be obtained and an employee's prior involvement in the matter would not cause her testimony to have an undue influence on proceedings. Without such extraordinary circumstances, ordering such expert witness testimony would undermine the bar on such testimony.

In Example 4, the expert had participated personally and substantially in a particular

matter and, thus, would have violated section 207(a)(1) had she testified as an expert on that same matter. Of interest, Example 4 also provides that a court order based on extraordinary circumstances could permit the expert testimony even if it would otherwise violate section 207(a)(1). By virtue of 32 C.F.R. § 516.49(a), the Department of the Army is effectively trying to supersede the provisions of 18 U.S.C. § 207 and its enabling regulations to control the flow of testimony in the federal and state courts.[3]

Furthermore, 32 C.F.R. § 516.49(a) and (b) and 32 C.F.R. § 516.52 also are in direct conflict with the authority of the judicial branch to control the admission of testimony for cases filed in federal court in order to achieve a just and a fair result. As stated in *McElya v. Sterling Medical, Inc.*, 129 F.R.D. 510, 514 (W.D.Tenn.1990), "[t]he Department of the Navy by its regulations at issue here is, in effect, attempting to assert a privilege not recognized by the Federal Rules of Civil Procedure or the law of evidence, that is, a privilege of the Secretary of Navy to decide what, how, and when evidence is made available to an adverse litigant or a court...." The decision in *Alexander v. FBI*, 186 F.R.D. 66 (D.D.C.1998), provides further distinction between the *Touhy* case and government contract cases, such as the *Gulf* cases:

> The Supreme Court's holding in *Touhy* is applicable only in cases where the United States is not a party to the original legal proceeding. *See, e.g., State of Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir.1992) ("As the Supreme Court has long held, [*Touhy*] regulations unquestionably give Justice Department employees the authority, when so ordered by superiors, to refuse to comply with a subpoena ordering disclosure of a confidential file when the United States is not a party to a legal action.") (citing *Touhy*, 340 U.S. at 470 [71 S.Ct. 416]); *Boron Oil Co.* [*v. Downie*], 873 F.2d [67,] 70 [ (4th Cir.1989) ] (considering *Touhy* and stating that "[t]he policy behind such prohibitions on the testimony of agency employees is to conserve governmental

resources when the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business."). *Touhy* simply holds that a subordinate government official will not be compelled to testify or to produce documents in private litigation, in which the federal government or any of its agencies is not a party in cases where a departmental regulation prohibits disclosure in the absence of consent by the head of the department. In cases originating in federal court in which the federal government is a party to the underlying litigation, the *Touhy* problem simply does not arise.

> . . .

> When the United States is a party to litigation, "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9–10, 73 S.Ct. 528, 97 L.Ed. 727 (1953). This would create a significant separation of powers problem.

*Alexander v. FBI*, 186 F.R.D. at 70 (footnote and other citations omitted); *see also Res. Invs., Inc. v. United States*, 93 Fed.Cl. at 380 ("With near unanimity, however, those courts considering the issue have concluded that, when the United States is a party to the litigation, the reach of disclosure-limiting *Touhy* regulations ends at the courthouse doors.") (citing numerous cases); *Romero v. United States*, 153 F.R.D. 649, 652 (D.Colo. 1994) ("[I]t simply makes no sense that a party [the federal government] would be allowed to determine whom the other side may endorse as a witness," and, "[b]y the same token, the Government cannot use this [Army] regulation to gain an unfair advantage in precluding the best evidence from being presented to this Court at trial."); *EEOC v. Los Alamos Constructors, Inc.*, 382 F.Supp. at 1375 ("When the government or one of its agencies comes into court (with very few exceptions), it is to be treated in exactly the same way as any other litigant.

---

3. *See also* the post-employment restrictions on former employees involved in the contracting process contained in 41 U.S.C. § 423 (2006) ("Restrictions on disclosing and obtaining con-

tractor bid or proposal information or source selection information"), and implementing regulations at 48 C.F.R. § 3.104 (2010) ("Procurement integrity.").

Appointment to office does not confer upon a bureaucrat the right to decide the rules of the game applicable to his crusades or his lawsuits.").

Defendant cites *United States v. Soriano–Jarquin,* 492 F.3d 495, 504–05 (4th Cir.2007), *cert. denied,* 552 U.S. 1189, 128 S.Ct. 1221, 170 L.Ed.2d 76 (2008), as a case in which the Department of Homeland Security's (DHS) *Touhy* regulations were upheld. Mr. Soriano–Jarquin, a convicted criminal, attempted to call an immigration special agent as a witness at his trial. The government raised DHS' *Touhy* regulations as a bar to such testimony. The trial court ordered Mr. Soriano–Jarquin to comply with the *Touhy* procedures for subpoenaing DHS employees, which he did not do. As a result, the trial court excluded the special agent as a witness. *Id.* at 499. The United States Court of Appeals for the Fourth Circuit affirmed the trial court, stating that "[t]he DHS *Touhy* regulations prohibit DHS employees from testifying about information obtained on the job absent departmental authorization," and that "the defendant [Mr. Soriano–Jarquin] made no attempt whatsoever to comply with the DHS regulations. Given this, he can hardly be heard to complain that the regulations caused him injury." *Id.* at 504 (citations omitted). Citing *Soriano–Jarquin,* defendant impliedly invites Gulf Group to make a request to the Army for authorization for Mr. Perry to provide expert testimony. In defendant's words, "Sections 516.51 and 516.52 [32 C.F.R. §§ 516.51, 516.52], moreover, indicate that personnel and former personnel seeking to act as witnesses must first make a request to the Army." The *Soriano–Jarquin* case, however, is distinguishable. By not complying with permission procedures in the *Soriano–Jarquin* case, the criminal defendant ignored a court order, for which reason alone the witness was able to be excluded.

In the *Gulf* cases, there is little if any doubt about the futility of the plaintiff asking the federal government for permission to use Mr. Perry as an expert witness. The defendant already has made a motion to the court to "exclude Mr. Perry's [expert] report and preclude his testimony at trial." Moreover, the apparently overreaching and internally inconsistent Army regulation at 32 C.F.R. § 516.49(b), which describes "*Exception[s] to the general prohibition*" quoted above, states: "In no event may present or former DA personnel furnish expert or opinion testimony in a case in which the United States has an interest for a party whose interests are adverse to the interests of the United States." 32 C.F.R. § 516.49(b); *see also* 32 C.F.R. § 516.52 (with language identical to section 516.49(b)). Therefore, under the facts and circumstances present in the cases before this court, there would appear to be little discretion in Army personnel to allow Mr. Perry's testimony, and little reason to apply to the Army for such permission.

Mindful of the separation of powers, the judiciary, not the executive branch controls the admission of evidence at trial. It is the court's prerogative, as well as the court's duty and responsibility under the Federal Rules of Evidence and the Rules of the United States Court of Federal Claims, to decide the factual and legal issues raised by the plaintiff's complaints, as well as to review objections to testimony when offered. The court will not abdicate its decision authority in this regard.

### CONCLUSION

For the foregoing reasons, defendant's motion in limine to exclude in advance the testimony and reports of Mr. Perry is **DENIED** at this time.

**IT IS SO ORDERED.**